## PUBLIC RECEIVING OFFICER.

---

THE SUPERVISORS OF ALBANY COUNTY *v.* DORR AND
HIS SURETIES, 7 Hill, 583.*

In Supreme Court, 25 Wend. 440.

*Public Officer; How far Liable for Money Stolen from his Office, without Imputation of Negligence or Default.*

THIS was a suit on an official bond of Dorr, as treasurer of the County of Albany, with sureties for the faithful dis-

---

* We give this case, though one of *affirmance,* for reasons which will appear by the note of the reporter subjoined and by the vote of the Court of Errors on the question of reversal.

charge of his duties as *County Treasurer.* The condition
of the bond was that Dorr " should faithfully execute the
duties of the office, and should pay according to law all
moneys which shall come to his hands and render a just
and true account, &c. when thereto required &c. The
breaches alleged were that he had not *paid over* the sum of
$2500, and that he *had not accounted, &c.*

The defendant Dorr, pleaded that he had rendered a just
and true account, &c., and had *paid over according to law*
all moneys which had come to his hands as county treasu-
rer *except the sum* of $1129, which being the identical
moneys received by him as county treasurer at his office in
the city of Albany, and before he was requested to pay out
the same was on the night of 11th March, 1839, *feloniously
stolen* from his office, without any negligence, want of due
care or other blame, or fault whatever on his part. To this
plea the plaintiffs demurred.

The Supreme Court held, Nelson, Ch. J. delivering the
opinion of the court. That the defendant was not respon-
sible for the money thus stolen from his office. That he
was not an *insurer, ex virtute officii,* while the money ne-
cessarily remained in his custody. The cases principally
relied on by C. J. Nelson, are *Lane* v. *Cotton and Frank-
land,* 1 Ld. Raym. 646, and *Whitfield* v. *Le Despenser,*
Cowp. 574, which require, to subject the public officer, proof
of *misconduct or neglect* in the execution of his duties. [He
cites also 7 Cranch, 242, the case of *Dunlop* v. *Munroe,*
which, however, does not seem very applicable to the issue
presented on the demurrer in this case.]

The Court of Errors were *equally* divided, 12 to 12 on
the question being put, " Shall this judgment he reversed ?
and the effect of this was to *affirm* the judgment.

Chancellor Walworth and two senators delivered opinions
not reported, in favor of affirmance and 3 Senators for re-
versal.

[The reporter says, in his marginal note. " The affirmance

however, has no binding force as a precedent, and the case has since it seems been overruled.    See note.*

☞ This dictum of the reporter may perhaps be safely enough assented to ; as the affirmance in this case did not ac-quire the full force of a *precedent*, in settling the question, so that the Court of Errors would hold itself precluded from re-ex-amining it when it should be again presented to them.    But what he says in the note below upon the subject of its being since settled *directly the other way* by the case of *Muzzy, Supervisor* v. *Shattuck*, seems to a certain extent, unsup-ported by the opinion of Jewett, J. 1 Denio, 233.    He makes no other reference or allusion to that case, than to say ;  " It is supposed that the principle of this case was decided in favor of the defendants, in the case of the *Supervisors of Albany* v. *Dorr*, and others 25 Wend. 444."    Without stop-ping to discuss the question, the learned judge then proceeds to show from the various sections of the statute what are the legal liabilities of the *collector of a town* and his sureties : and he seems to hold that the collector is liable under the statute provision, "as a *debtor*, if he have not collected and paid over; and that he and his sureties are therefore liable, whether the omission is the result of misfeasance or neglect, unavoida-ble accident  or felony committed by another."    He held the second plea also bad in not averring that the *identical money*

---

* *Note* by the reporter.    Although the effect of this equal division of opin-ion among the members of the court was to affirm the judgment of the court below, yet the affirmance did not settle the question of law, and has no bind-ing force as a precedent.    *Bridge* v. *Johnson*, 5 Wend. 342, 372 to 375, and the cases there cited.    Ram on Legal Judgments, 18.    Indeed the law seems to have been settled since, and properly it is believed, directly the other way, by the case of *Muzzy, Supervisor* v. *Shattuck and others*, 1 Denio, 233, decided by the Supreme Court in May, 1845.    That decision, which appears to be utterly irreconcileable with the one reported in the text; was subse-quently reviewed by the court for the Correction of Errors, and in December, 1846, was unanimously affirmed.    A similar decision was made in the Su-preme Court of the United States, in January, 1845,  The question arose in an action on  the official bond of the receiver of public moneys at Chicago.
*The United States* v. *Prescott and others*, 3 Howard's Rep. 578.

collected had been stolen: and in this it is distinguishable from the case of *Dorr*.

In the case of *The United States* v. *Prescott and others*, the plea was in substance the same as that in the case of *Muzzy* v. *Shattuck*, and did not aver as in the case of *Dorr*, that "the *identical money* was stolen, without any negligence, want of due care or other blame or fault whatever on his part." On the contrary the plea simply averred that as receiver of public moneys the defendant had "used *ordinary care and diligence*, in the safe keeping of the same &c."

Mr. Justice McLean, however, who delivered the opinion of the court, it must be admitted, places the case upon grounds broad enough to cover not only the case of *Muzzy* v. *Shattuck*, which it most resembles, but also that of *Dorr*. He says "There is no principle on which such defence can be sustained. The obligation to keep safely the public money is absolute, without any condition, express or implied, and nothing but the payment of it when required, can discharge the bond."

"Public policy requires that every depository of the pub-.ic money should be held to a strict accountability; not only that he should exercise the highest degree of vigilance, but that "he should keep safely," the moneys which come to his hands. Any relaxation of this condition would open a door to fraud, which might be practised with impunity. As every depositary receives the office with a full knowledge of its responsibilities, he cannot in case of loss, complain of hardship. He must stand by his bond, and meet the hazards which he voluntarily incurs."